**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |  |
|---|---|---|
| **ICON INTERNET COMPETENCE** **NETWORK B.V.,** | § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Civil Action No. 3:11-cv-1131-O** |
| **TRAVELOCITY.COM LP,** | § § § | |
| **Defendant.** | § § | |

**CLAIM CONSTRUCTION ORDER**

Before the Court are Plaintiff Icon Internet Competence Network B.V.'s ("ICON") Opening

Claim Construction Brief and Appendix in Support (ECF Nos. 46-47); Defendant Travelocity.com

LP's ("Travelocity") Opening Claim Construction Brief and Appendix in Support (ECF Nos. 44-45);

ICON's Responsive Claim Construction Brief (ECF No. 51); and Travelocity's Responsive Claim

Construction Brief (ECF No. 50).

**I.      BACKGROUND**

U.S. Patent No. 6,002,853 (the "'853 Patent") provides for a virtual reality Yellow Pages

system that creates a graphical depiction of a series of business storefronts through which the viewer

can navigate to obtain information about the respective businesses. *See generally* U.S. Patent No.

6,002,853 (filed Dec. 14, 1999) [hereinafter "'853 Patent"].  The parties have presented to the Court

for construction nine terms in the '853 Patent: (1) "category"; (2) "categories in which respective

businesses are classified"; (3) "generating a screen display"; (4) "cause a screen display to be

1

generated for the client"; (5) "graphics items arranged to provide the appearance of at least part of a commercial area, at least some of the graphics items having the appearance of storefronts"; (6) "multiple storefronts of the screen display"; (7) "appearance of respective storefronts"; (8) "respective graphics items being associated with respective businesses"; and (9) "screen display being navigable to reveal graphics items adjacent those that are displayed." *See generally* Pl.'s Opening Claim Construction Br., ECF No. 46; Def.'s Opening Claim Construction Br., ECF No. 44. The Court held a hearing on May 1, 2012 to allow the parties to present their proposed constructions to the Court. *See* Minute Entry, May, 1, 2012, ECF No. 54. The Court's adopted construction of the disputed claim terms are explained below.

## II.    LEGAL STANDARDS - PATENT CLAIM CONSTRUCTION

Patent infringement is the unauthorized making, using, selling, offering to sell, or importing into the United States of any patented invention during the term of the patent. 35 U.S.C. § 271(a). In a patent infringement case, a court first determines the proper construction of the patent claims by establishing, as a matter of law, the scope and boundaries of the subject matter of the patent. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 384-85 (1996). Second, the trier of fact compares the properly construed claims to the allegedly infringing device(s) and determines whether there has been an infringement. *Id.* The issue before the Court is the proper construction of certain disputed claims in the '853 Patent.

The claims of a patent are the numbered paragraphs at the end of the patent that define the scope of the invention, and thus the scope of the patentee's right to exclude others from making, using, or selling the patented invention. *See Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333, 1335-36 (Fed. Cir. 2004). Claim construction is the process of giving proper meaning to the claim

language, thereby defining the scope of the protection. *See Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 619 (Fed. Cir. 1995).

Claim construction starts with the language of the claim itself, since a patent's claims "define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). "The claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.* at 1314. Moreover, claim terms should be given their ordinary and customary meaning as understood by a person of ordinary skill in the art as of the effective filing date of the patent application. *Id.* at 1313. This is because a patent is addressed to, and intended to be read by, others skilled in the particular art. *Id.* However, the patentee is free to define his own terms, so long as any special definition given to a term is clearly defined in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992).

When construing disputed claim terms, the court should look first to the intrinsic record of the patent, including the claims and the specification, to determine the meaning of words in the claims. *Nazomi Commc'ns., Inc. v. Arm Holdings, PLC*, 403 F.3d 1346, 1368 (Fed. Cir. 2005). "The specification is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315. The specification acts as a dictionary when it expressly or implicitly defines terms. *Id.* at 1321. Courts should also refer to the prosecution history if it is in evidence. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The prosecution history is part of the intrinsic record and consists of a complete record of all proceedings before the United States Patent and Trademark Office ("PTO"), including prior art cited during the examination of the patent and express representations made by the applicant as to the scope of the claims. *Id.*

3

The Federal Circuit has also stated that district courts may "rely on extrinsic evidence, which consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317 (internal quotation marks omitted). Dictionaries and treatises can be "useful in claim construction[,]" particularly technical dictionaries which may help the court "to better understand the underlying technology and the way in which one of skill in the art might use the claim terms." *Id.* at 1318 (internal quotation marks omitted). As to expert testimony, the Federal Circuit has stated:

> [E]xtrinsic evidence in the form of expert testimony can be useful to
> a court for a variety of purposes, such as to provide background on
> the technology at issue, to explain how an invention works, to ensure
> that the court's understanding of the technical aspects of the patent is
> consistent with that of a person of skill in the art, or to establish that
> a particular term in the patent or the prior art has a particular meaning
> in the pertinent field.

*Id.* However, "a court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent." *Id.* (internal quotation marks omitted). Extrinsic evidence is less significant than the intrinsic record, and undue reliance on it may pose a risk of changing the meaning of claims, contrary to the public record contained in the written patent. *Id.* at 1317-19.

## III.    CLAIM CONSTRUCTION

### 1.    "category"

ICON argues that "category" should be given its plain and ordinary meaning of "a class or division in a scheme of classification," as defined by Webster's New World College Dictionary, since neither the claims nor the specification attribute any special meaning to the term beyond its

ordinary usage.  Pl.'s Opening Claim Construction Br. 5, 8, ECF No. 46.  Travelocity argues, by contrast, that the patentee deliberately narrowed the meaning of the term "category" to refer only to a "type of good or service," by specifically providing for a narrowed definition in the specification. Def.'s Opening Claim Construction Br. 9, ECF No. 44.  ICON responds that the "types of goods or services that a business provides are just one way to categorize a business," and that the term "category" refers to a more general type of classification.  Pl.'s Opening Claim Construction Br. 7-8, ECF No. 46.

The Federal Circuit has made clear that while the words of a claim are generally given their ordinary and customary meaning, "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess." *Phillips*, 415 F.3d at 1313, 1316.  "In such cases, the inventor's lexicography governs." *Id.* at 1316 (Fed. Cir. 2005) (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)).  To act as his own lexicographer, however, the patentee "must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Thorner v. Sony Computer Entm't Am. LLC*, No. 2011-1114, 2012 WL 280657, at *2 (Fed. Cir. Feb. 1, 2012) (citing *CCS Fitness, Inc.*, 288 F.3d at 1366).

In the Summary of the Invention, the applicant states that "a system has been described which provides for presentation of Yellow Pages information in a more appealing format." '853 Patent col.10 ll.11-13.  Then, in the Background of the Invention, the applicant explains how the Yellow Pages is a directory, developed more than eighty years ago, that "contains information about businesses categorized by headings." *Id.* col.1 ll.19-21.  The specification then states that "[t]he categories are *defined* by type of product or service sold by the various businesses." *Id.* col.1 ll. 21-

22 (emphasis added). The specification again addresses, in the Summary of the Invention, what constitutes a "category":

> In one embodiment, the interface is particularly suited for searching for businesses, and provides for searching at least by category (type of goods or services). In alternative embodiments, the interface provides for searching of any desired field selected from a plurality of fields, such as category (type of goods or services), location, phone number, zip code, area code, subcategory (e.g. type of cuisine–Pizza, German, Vietnamese, Chinese), [and] sublocation (Eastside, North, Suburbs, etc.).

*Id.* col.8 ll.19-28. Further, the patentee provides examples of "goods or services" including car dealers, restaurants, and furniture stores, *see id.* col.3 ll.55-65, which are identified as examples of categories in Figures 5, 6, and 10, *see id.* figs. 5, 6, 10.

ICON argues that the patent prosecution history supports a broader construction. Pl.'s Opening Claim Construction Br. 6, ECF No. 46. In response to a PTO office action, the patentee attempted to distinguish prior art by explaining that an advantage of the patentee's invention is that it "allows groups of business of the same type (category) to be grouped together." App. Pl.'s Opening Claim Construction Br. (Resp. to Office Action of May 18, 1998) 8, at App. 99, ECF No. 47-2. The patentee further explained that this aspect of the invention provided a benefit because "businesses that are located next to other businesses that sell similar goods or services see an increase in traffic because the customer who is interested in a particular good or service can more easily comparison shop or locate hard to find goods or services." *Id.* The patentee provided an example of the grouping of such businesses, stating that "[f]or example, if the search request specified restaurants . . . multiple storefronts of the screen display . . . would be associated with restaurants." *Id.* at App. 98. Accordingly, contrary to what ICON suggests, the prosecution history

6

lends additional support to a finding that the patentee specifically defined "category" in a way that narrowed the plain and ordinary meaning of the term.

ICON's most compelling argument for a broad construction of the term "category" is the existence of an additional limitation in Claim 5. *See* '853 Patent col.10 ll.62-64. Claim 5 states that the data in the database described in Claim 1 "further includes the goods or services provided by the business." *See id.* ICON argues that this additional limitation in dependent Claim 5 makes clear that the patentee did not redefine the term "category" to mean something less than the full scope of its ordinary meaning. Pl.'s Responsive Claim Construction Br. 7, ECF No. 51. Indeed, the Federal Circuit has held that "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1314-15. Claim 1 claims "a database including data about businesses, which data includes at least the names of respective businesses and categories in which respective businesses are classified . . . . " *See* '853 Patent col.10 ll.26-28. Thus, it would seem that the term "category" could not itself encompass goods or services. Yet, even a broad construction of the term "category," as proposed by ICON, would include the possibility of a categorization by type of good or service, among other types of categorizations. As such, it appears that information relating to "*the* goods or services provided by the business," as claimed in Claim 5, could be provided in the database while still allowing the businesses to be identified by a "*type* of good or service," consistent with the definition of "category" provided by the specification and supported in the prosecution history. Indeed, information relating to "the goods or services provided by the business," as claimed in Claim 5, could conceivably include more detailed information relating to sub-categories of the goods and

7

services, while still allowing the businesses to be categorized by a more general type of good or

service such as a restaurant, furniture store, or car dealership.

Based on the foregoing, the Court finds that the patentee has indicated his intent to act as a

lexicographer and provide his own definition of "category." *See Astrazeneca AB v. Mut. Pharm. Co.*,

384 F.3d 1333, 1339 (Fed. Cir. 2004) (finding that the patentee acted as his own lexicographer to

limit the definition of solubilizer when he stated in the specification that "[t]he solubilizer suitable

according to the invention are defined below"); *see also Edward Lifesciences LLC v. Cook Inc.*, 582

F.3d 1322, 1334 (Fed. Cir. 2009) (finding that the patentee's use of "i.e." in the specification

signaled the patentee's intent to define the word to which it referred and thus limited the word's

definition).   The patentee's use of the term "defined" in the specification, its repeated use of

parentheticals to describe category as "type of goods or services," and the examples of categories

provided in the written description and the figures, all lend support to a finding that the patentee

intended category to be defined as "type of good or service."

        **2.**        **"categories in which respective businesses are classified"**

Travelocity applies its proposed construction of "category" to argue that "categories in which

respective businesses are classified" should be construed to mean "types of goods or services of each

business in the database."  Def.'s Opening Claim Construction Br. 11, ECF No. 44.  Travelocity

largely bases its proposed construction on the plain and ordinary meaning of  "respective," defined

by Random House Webster's College Dictionary as "pertaining individually to each of a number of

things."  App. Supp. Def.'s Opening Claim Construction Br. (Random House Webster's Coll.

Dictionary) at App. 30, ECF No. 45.  Travelocity argues that, in the context of the claim, "respective

businesses" necessarily refers to each business in the database.   Def.'s Responsive Claim

Construction Br. 2, ECF No. 50. ICON argues, by contrast, that the term "classified" should be given its ordinary meaning "to arrange or group in classes according to some system or principle." Pl.'s Opening Claim Construction Br. 5, ECF No. 46; App. Pl.'s Opening Claim Construction Br. (Webster's New World Coll. Dictionary) at App. 130, ECF No. 47-3. ICON argues that the Court should apply the plain meaning of the terms "category" and "classified" to construe the disputed term as "classes in a scheme of classification in which respective businesses are arranged in said classes." Pl.'s Opening Claim Construction Br. 5-6, ECF No. 46.

In light of the Court's construction of "category," *see supra* Part III.1, the Court finds that Travelocity's proposed addition of the phrase "in the database" does not add an additional limitation to the claim, but rather adds clarification to the claim language, making clear that the businesses referred to are those existing in the database. *See* '853 Patent col.10 ll.25-26. Indeed, the preceding claim language–claiming "a database defined in the memory, the database including data about businesses, which data includes at least the names of respective businesses and categories in which respective businesses are classified"–clarifies that the businesses to which the claim refers are those included in the database. *See* '853 Patent col.10 ll.25-28. Based on the foregoing, the Court finds that the proper construction of "categories in which respective businesses are classified" is "type of good or service of each business in the database."

### 3.    "generating a screen display"

ICON argues that "generating a screen display" should be construed to mean "producing a screen display for communication to the client," where the "screen display" is a "web page or similar collection of data for constructing a visual display." Pl.'s Opening Claim Construction Br. 9, ECF No. 46. Travelocity argues that the claim language dictates that "generating a screen display" must

9

be construed as "selecting and arranging graphics items for inclusion in a screen visible on the client," where "graphics items" are construed as simply "images."   Def.'s Opening Claim Construction Br. 12, ECF No. 44.

First, ICON contends that the Court should construe "generate" to mean "producing," in accordance with the Webster's New College World Dictionary definition.  *Id.* at 12-13; App. Pl.'s Opening Claim Construction Br. (Webster's New World Coll. Dictionary) at App. 138, ECF No. 47-3.  Travelocity responds that the term "generating" must necessarily include "selecting" graphics items pursuant to the language of the claim itself.  *See* '853 Patent col.10 ll.46-48.  Claim 1 explains how, after generating a screen display, "the selection of individual graphics items for inclusion in the screen display vary[] depending on the results of the search."  *Id.* col.10 ll.46-48.  Travelocity maintains that the only plausible antecedent basis for "the selection" is the act of "generating," referred to earlier in the claim.  Def.'s Opening Claim Construction Br. 12, ECF No. 44.  Travelocity further argues that "generating" must also include the "arranging" of graphics items based on claim language that provides that the screen display includes "graphics items arranged to provide the appearance of at least part of a commercial area."  *See* '853 Patent col.10 ll.36-39.  Travelocity finds additional support for its proposed construction in the specification, which explains that in Step 64 the "server selects graphics in response to the results of the database search," *see id.* fig. 3, and that "at step 64, the server creates a virtual reality space by selecting and assembling graphics . . . in response to the results of the database search."  *See id.* col.8 ll.45-47.  The Court finds that Travelocity has properly construed "generating" to mean "selecting and arranging graphics items."

Next, ICON argues that "screen display" must include a "web page or similar collection of data" based on the specification's discussion of (1) programming languages and software packages

that can be used to implement embodiments of the claimed invention, (2) web browsers that allow a client to view text and graphics, and (3) the general purpose and workings of a web page. Pl.'s Opening Claim Construction Br. 12, ECF No. 46 (citing '853 Patent col.2 ll.59-col.3 ll.14, col.5 ll.25-35, col.7 ll.10-15). Travelocity responds that while the specification discusses web pages and web browsers when describing the background of the invention and the prior art, the specification does not limit the screen display to a webpage. Def.'s Opening Claim Construction Br. 14, ECF No. 44 (citing '853 Patent col.8 ll.50-52). The Court finds Travelocity's argument persuasive. Neither the claim language nor the specification limits the "screen display" to a web page. At best, the specification explains that web browsers can be used to launch a virtual reality helper application to view the text or graphics of the virtual reality space. *See* '853 Patent col.3 ll.18-20, col.8 ll.49-52. ICON fails to point the Court to language in the specification that seeks to make web pages and web browsers a limitation on the term "screen display," where the claim language does not include such a limitation. Moreover, ICON fails to explain the meaning of a "similar collection of data" in its proposed definition, or where that description is provided for in the claims.

Travelocity further argues that a "screen display" necessarily implies a "visible" screen, given that Figures 5 through 10, described as "screens that are sent from the server to the client in response to a database search query," *see* '853 Patent col.9 ll.60-61, all depict the screen as a scene visible to the user's computer. Def.'s Opening Claim Construction Br. 13, ECF No. 44. Travelocity also argues that the plain and ordinary meaning of "display" suggests that the item displayed be visible. App. Supp. Def.'s Opening Claim Construction Br. (Random House Webster's Coll. Dictionary) at App. 28, ECF No. 45; *id.* (The Merriam-Webster Dictionary) at App.33; *id.* (McGraw-Hill Dictionary of Scientific & Technical Terms) at App. 38. ICON claims that the term "visible" ought

not to be included in the proposed construction because the proposed term would not comport with the subsequent limitation in the claim requiring the screen display to be "navigable to reveal graphics items adjacent those that are displayed." '853 Patent col.10 ll.44-46.  ICON contends that "[i]f the screen display is a scene that is fully visible with no hidden parts then there would be no need for it to be navigable and no possibility of revealing other graphics items."  Pl.'s Responsive Claim Construction Br. 9-10, ECF No. 51.  The Court disagrees.  The fact that the screen display must be navigable to reveal additional graphics items does not suggest that the graphics items initially present on the client are not visible.

Accordingly, the Court finds that the figures and the written description support a construction that defines "screen display" as something that is visible.  *See Boss Indus., Inc. v. Yamaha Motor Corp. U.S.A., Inc.*, 333 F. App'x 531, 541 (Fed Cir. 2009) (finding that although the claim language does little to clarify the meaning of the disputed term, "the figures in the specification" supported the district court's construction of the term).  Moreover, the inclusion of the requirement that the screen display be visible to the user's computer is consistent with the dictionary definition of "display."  *See id.* (citing *Phillips* at 1322-23) (acknowledging that a construction "may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents").  The Court also construes "graphics items" as images, as explained below.  *See infra* Part III.5.  Based on the foregoing, the Court finds that the proper construction of "generating a screen display" is "selecting and arranging images for inclusion in a screen visible on the client."

4.      **"cause a screen display to be generated for the client"**

Both ICON and Travelocity ask the Court to apply its construction of "generating a screen display" as it appears in Claim 1 to the term "cause a screen display to be generated for the client" as it appears in Claims 10 and 11.  Pl.'s Opening Claim Construction Br. 13, ECF No. 46; Def.'s Opening Claim Construction Br. 11-12, ECF No. 44.  Given the similarity in language from Claim 1, the Court finds that the change in the structuring of the phrase in Claims 10 and 11 does not change the meaning of the term.  *See* '853 Patent col.11 ll.17-27, col.12 ll.11-25.  Accordingly, the Court construes the phrase to mean "cause the selection and arrangement of images for inclusion in a screen visible on the client."  *See supra* Part III.3.

5.      **"graphics items arranged to provide the appearance of at least part of a commercial area, at least some of the graphics items having the appearance of storefronts"**

ICON argues that "graphics items arranged to provide the appearance of at least part of a commercial area, at least some of the graphics items having the appearance of storefronts" should be construed to mean "graphics items arranged to provide the depiction of at least part of a commercial area and to include depictions of storefronts," where "graphics items" are defined as "pictures, images, renderings, drawings or other visual depictions," and "commercial area" is defined as "being a part of a building, lot, district, city, etc. having a commercial use or character."  Pl.'s Opening Claim Construction Br. 13-14, ECF No. 46.  Travelocity argues that the construction should read "graphics items arranged into a scene resembling a street having businesses, with some of the graphics items resembling the front exterior of a business facing the street," where "graphics items" are defined as "images."  Def.'s Opening Claim Construction Br. 15, ECF No. 44.

13

Both ICON and Travelocity cite the specification's description of a graphic as a "GIF" or "JPEG" in support of their proposed construction of "graphics items." *See* '853 Patent col.9 ll.49-50 ("In one embodiment, the server contains a regular graphic (e.g., a GIF or JPEG)."); *see also id.* col.3 l.19 ("Web browsers . . . allow a client to view text, graphics (e.g.; 'GIFS', 'JPEGs')."). Travelocity argues that ICON's proposed construction is incorrect, however, because nowhere in the specification or prosecution history does the patentee refer to "renderings, drawings, or other depictions," whereas the "GIF" and "JPEG," referenced in the specification, describe image formats. Def.'s Responsive Claim Construction Br. 6-7, ECF No. 50. ICON's own extrinsic evidence defines "GIF" as: "Graphics Interchange Format, a format for storing image files. It is the most common format for inline images in HTML documents. The other common format is JPEG." App. Pl.'s Opening Claim Construction Br. (A Glossary of Internet & Web Terminology) at App. 148, ECF No. 47-3. The same extrinsic evidence defines "JPEG" as: "Joint Photographic Experts Group, an image format. In general JPEG allows for higher quality images than GIF. Browsers cannot display JPEG images inline, and instead must display them using helper programs." *Id.* at App. 151. In light of the specification's repeated description of "graphics" as "images," and the consistent corroboration of ICON's extrinsic evidence, the Court finds that Travelocity's proposed construction of "graphics items" as "images" is correct.

Both ICON and Travelocity recognize that neither the claim nor the specification define "commercial area." Pl.'s Responsive Claim Construction Br. 10, ECF No. 51; Def.'s Opening Claim Construction Br. 15, ECF No. 44. ICON argues therefore that "commercial area" should be given its plain and ordinary meaning. Pl.'s Opening Claim Construction Br. 15, ECF No. 46. ICON contends that this definition can be found through an amalgamation of Webster's New World

College Dictionary's definition of "area"–defined as "a part of a house, lot district, city, etc. having

a specific use or character"–with the definition of "commercial"–defined as "being part of a building,

lot, district, city, etc. having a commercial use or character." App. Pl.'s Opening Claim Construction

Br. (Webster's New World Coll. Dictionary) at App. 133, 137, ECF No. 47-3.   Travelocity argues

that ICON's proposed construction of "commercial area" improperly broadens the scope of the

claims by (1) inadequately delineating the claim terms by using an open-ended list, (2) creating a

proposed construction that fails to take into account the appearance of "multiple" storefronts, and

(3) failing to construe the graphics for the storefronts as a subset of the graphics for the commercial

area.   Def.'s Opening Claim Construction Br. 19, ECF No. 44.

Travelocity begins its proposed construction of "commercial area" by examining the

specification's description of the invention as a whole, which Travelocity describes as "a *scene*,

composed from images, that is a navigable, physical metaphor of a *street having businesses*," as

depicted by Figure 6.   *Id.* at 15-17.   Travelocity maintains that its proposed construction of

"commercial area" as "a scene resembling a street having businesses" is proper because the

specification read as a whole suggests that the character and fundamental nature of the invention

requires such a limitation to be read onto the claim.   *Id.* at 16.   Travelocity further argues that every

disclosed embodiment describes a virtual reality scene containing streets.   *Id.* at 15-17; '853 Patent

col.4 ll.24-31; *id.* col.8 ll.53-56 ("For example, in one embodiment, a navigable virtual reality scene

is presented comprising a street having storefronts . . . representing the best hits from the database

search.  In one embodiment, a predetermined minimum amount of information about each business

is provided on the street."); *id.* col.9 ll.14-22 ("It should be noted that the appearance of the street

presented will vary depending on the results of the database search.  The presented street will have

an appearance of interest to the user doing the search, and will have storefronts of businesses of interest to that user . . . . Thus, like businesses are grouped together for the user's convenience on a boulevard.  In one embodiment, the appearance of the street (excluding the storefronts) changes depending on the selected category . . . ."); *id.* col.9 ll.31-35 ("[Figures] 4A and 4B illustrate one embodiment of making a virtual reality scene to be used in displaying database search results.  As illustrated in [Figure] 4A, a camera . . . is used to take several pictures of an actual street from various vantage points."); *id.* col.9 ll.46-48 ("In an alternative embodiment, the virtual reality streets are formed using animations.").

ICON responds that, although the claim language requires the screen display to include storefronts, the claims do not require that those storefronts face a street.  Pl.'s Responsive Claim Construction Br. 11, ECF No. 51.  ICON maintains that only certain embodiments describe the virtual reality scene as having a street, and that the claim language never makes reference to a street. *Id.* at 12.  ICON argues that the determination of whether a "commercial area" requires a street is better suited for the infringement analysis.  *Id.* at 11-12.  The Court agrees with ICON.  While the specification references streets in its description of certain embodiments, the specification does not include streets as a part of every embodiment, nor does the claim language make mention of a street. *See, e.g.,* '853 Patent col. 8 ll.63-col. 9 ll.6, col.9 ll.48-52.  Moreover, the specification is not so clear and unambiguous as to support a finding that the fundamental nature of the invention requires a virtual scene depicting a street.  *See Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1325 (Fed. Cir. 2008) ("The claims of the patent must be read in light of the specification's consistent emphasis on this fundamental feature of the invention.").

Travelocity next argues that "storefronts" should be construed as "resembling the front exterior of a business facing the street," in accordance with the dictionary definitions.  Def.'s Opening Claim Construction Br. 18, ECF No. 44; App. Supp. Def.'s Opening Claim Construction Br. (The American Heritage Dictionary) at App. 45, ECF No. 45; *id.* (Random House Webster's College Dictionary) at App. 29.[1]  The specification describes certain embodiments as a virtual reality scene encompassing a street with storefronts.  *See* '853 Patent col.8 ll.53-55 ("[I]n one embodiment, a navigable virtual reality scene is presented comprising a street having storefronts."); *id.* col.9 ll.14-18 ("[T]he appearance of the street presented will vary depending on the results of the database search.  The presented street will have an appearance of interest to the user doing the search, and will have storefronts of businesses of interest to that user."); *id.* col.9 ll.48-52 ("In one embodiment, the server contains a regular graphic (e.g., a GIF or JPEG) of a storefront for each business, and the server creates a virtual reality scene by stitching together graphics in response to the results of a database search.").  The specification does not, however, make the inclusion of a street a requirement of the virtual reality scene.  *See Thorner v. Sony Computer Entm't Am. LLC*, No. 2011-1114, 2012 WL 280657, at *2 (Fed. Cir. Feb. 1, 2012) ("It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments . . . .").  Travelocity even concedes that alternative definitions of "storefront" exist, such as "[a] room in a commercial building at street level," which would not necessarily require a street in the scene.  Def.'s Opening Claim Construction Br. 18, ECF No. 44; App. Supp. Def.'s Opening Claim Construction Br. (The American Heritage Dictionary) at App. 45, ECF No. 45.  ICON contends that "storefront" should

---

[1] Travelocity also uses the definition of storefront as further support for its argument that the "commercial area" must include a street.  Def.'s Opening Claim Construction Br. 18, ECF No. 44.

be given its plain and ordinary meaning, but does not offer a specific alternative construction.  Pl.'s Opening Claim Construction Br. 16-17, ECF No. 46.  While the Court finds that the plain and ordinary meaning of "storefront" includes the "front exterior of a business," the Court finds, as explained above, that neither the claim language nor the specification necessarily contemplates the existence of a street.

Finally, Travelocity argues that ICON's proposed construction improperly divides out "storefronts" as a graphics item separate from the "commercial area."  Def.'s Responsive Claim Construction Br. 8, ECF No. 50.  Travelocity argues that the claim language–"graphics items arranged to provide the appearance of at least part of a commercial area, at least some of the graphics items having the appearance of storefronts"–makes clear that the storefronts are a subset of the commercial area.  '853 Patent col.10 ll.37-40.  The Court finds Travelocity's proposed construction to be consistent with the claim language.

Based on the foregoing, the Court construes the term "graphics items arranged to provide the appearance of at least part of a commercial area, at least some of the graphics items having the appearance of storefronts," as "images arranged into a scene resembling an area having businesses, at least some of the images having the look of the front exterior of a business."

6.    **"multiple storefronts of the screen display"**

ICON argues that "multiple storefronts of the screen display" should be construed to mean "the screen display includes depictions of more than one storefront."  Pl.'s Opening Claim Construction Br. 16, ECF No. 46.  Travelocity contends that the term should be construed as the "the front exterior of multiple businesses facing the street that are visible in the scene."  Def.'s Opening Claim Construction Br. 19-20, ECF No. 44.  In support of its proposed construction, ICON points

to the prosecution history, which states that "multiple storefronts are associated with businesses of the same category depending on the search request.  For example, if the search request specified restaurants (see Fig. 6), multiple storefronts of the screen display (Fig. 7) would be associated with restaurants."  App. Pl.'s Opening Claim Construction Br. (Resp. Office Action of May 18, 1998) 8, at App. 99, ECF No. 47-2.  The parties repeat their arguments as to the construction of the terms "storefront" and "screen display," and do not argue that the terms should be construed differently in this context.  *See* Pl.'s Responsive Claim Construction Br. 14, ECF No. 51;  Def.'s Responsive Claim Construction Br. 10, ECF No. 50.

The Court has already determined the proper construction of "storefront" to be the "front exterior of a business," *see supra* Part III.5, and the proper construction of "screen display" to be "images in a screen visible on the client," *see supra* Part III.3.  Further, the Court finds that "multiple" can be given its plain and ordinary meaning of "more than one," and neither party argues otherwise.  Based on the foregoing, the Court finds that the proper construction of "multiple storefronts of the screen display" is "more than one front exterior of a business in a screen visible on the client."

### 7.      "appearance of respective storefronts"

ICON declines to provide a specific construction of the phrase "appearance of respective storefronts," other than to contend that it should be given its plain meaning.  Pl.'s Opening Claim Construction Br. 17, ECF No. 46.  Travelocity contends that the term should be construed as "the look of the front exterior of each business facing the street."  Def.'s Opening Claim Construction Br. 17, ECF No. 44.  ICON looks to the claim language and the specification as a whole to find that the patent "discusses the use of visual depictions, such as photographs and images, to be included in the

19

generated display for a client with some of those visual depictions being depictions of storefronts." *Id.* ICON repeats its argument that Travelocity's proposed construction attempts to import limitations from the specification onto the claim, namely, "facing the street," which ICON argues appears in only one embodiment. *Id.*

Travelocity argues that its proposed construction is consistent with the patentee's stated goals of (1) "making a visually stimulating Yellow Pages" and (2) "physically grouping like businesses together." '853 Patent col.9 ll.14-29. Travelocity also cites the following language from the specification: "the appearance of the street presented will vary depending on the results of the database search. The presented street will have an appearance of interest to the user doing the search, and will have storefronts of businesses of interest to that user." *Id.* col.9 ll.14-17. Travelocity again offers the dictionary definition of "storefront" as "the side of a store facing a street." Def.'s Opening Claim Construction Br. 21, ECF No. 44. Further, Travelocity reiterates that "respective" should be defined as "pertaining individually to each of a number of things." Def.'s Responsive Claim Construction Br. 10, ECF No. 50.

The term at issue appears only in Claim 6, a dependent claim of Claim 1. '853 Patent col.10 l 66. The dependent nature of Claim 6 suggests that the "respective storefronts" to which the claim language refers are those that appear in the screen display referenced in Claim 1. As such, the terms should be given meaning consistent with their construction in Claim 1. The Court finds that the term "appearance" should be given its plain and ordinary meaning of "look," and the parties do not argue otherwise.[2] As explained above, the Court has construed "storefront" to mean the "front exterior of

---

[2] At the hearing, the parties agreed that "appearance" should be construed to mean the "look" of the respective storefronts.

a store," *see supra* Part III.5, 6; "respective" to mean "pertaining individually to each of a number of things," *see supra* Part III.2; and "screen display" to mean "a screen visible on the client," *see supra* Part III.3. Based on the foregoing, the term "appearance of respective storefronts" should be construed to mean "the look of the front exterior of each business in a screen visible on the client."

### 8. "respective graphics items being associated with respective businesses"

ICON argues that "respective graphics items being associated with respective businesses" should be construed to mean "particular graphics items are associated with a particular business for which information was returned as a result of the search." Pl.'s Opening Claim Construction Br. 19, ECF No. 46. Travelocity argues that the correct construction is "each graphics item in the scene is associated with a particular business in the database." Def.'s Opening Claim Construction Br. 21, ECF No. 44. Both ICON and Travelocity point the Court to the specification language stating that "[i]n one embodiment, the server contains a regular graphic (e.g., a GIF or JPEG) of a storefront for each business." '853 Patent col.9 ll.48-49. ICON also cites to the prosecution history, wherein the patentee states that "[i]n the embodiment of applicant's invention . . . multiple storefronts are associated with businesses of the same category depending on the search request. For example, if the search request specified restaurants (see Fig. 6), multiple storefronts of the screen display (Fig. 7) would be associated with restaurants." App. Pl.'s Opening Claim Construction Br. (Resp. Office Action of May 18, 1998) 7, at App. 98, ECF No. 47-2. ICON also cites to selections of the specification that discuss graphics items not associated with a particular business. *See* '853 Patent col.8 ll.65-67 ("[I]f the search were a search for restaurants, a billboard may show an advertisement for a cola product."); *see also id.* col. 9 ll. 4-6 ("Other features of streets, such as street lamps, phone booths, etc., may be presented for added visual effect."). Accordingly, ICON maintains that

21

Travelocity's proposed construction is incorrect because it is possible that some "graphics items" are not associated with a particular business.  Pl.'s Responsive Claim Construction Br. 16, ECF No. 51.

Travelocity reiterates the definition of "respective" as "pertaining individually to each of a number of things," arguing that the term "respective" is not a term of art such that dictionaries can be used to define it in the context of the claim.  Def.'s Opening Claim Construction Br. 21-22, ECF No. 44.  Travelocity then points to Figure 4B as evidence that each graphics item in the generated scene represents a particular business.  *Id.* at 22.  Travelocity argues that ICON's proposed construction of "particular" graphics items potentially includes a selection that encompasses less than all of the graphics items, and therefore changes the claim scope.  *Id.* at 23.

The Court finds that Travelocity's proposed construction unduly narrows the claims.[3]  The patentee's use of the word "respective" in this context refers to "graphics items having the appearance of storefronts" referenced in the preceding clause.  *See* '853 Patent col.10 ll.39-40.  The claim language instructs that "at least some" of the graphics items must have the appearance of storefronts, which suggests that some of the graphics items may not.  *See id.* col.10 l.38.  Accordingly, the graphics item that are "associated with respective businesses" are those graphics items that have the appearance of storefronts, but may exclude graphics items not related to storefronts.  This construction is supported by the specification, which speaks of the possibility of

---

[3] The Court notes that, at the hearing, both parties argued that the term "respective" should be given the same meaning throughout all of the claims.  Yet, both parties also conceded that the proper definition of "respective" depends on the context in which it appears.  Here, the Court finds that the structure of the claim language does not indicate that "respective" should be construed to mean that each of the graphics items are associated with a business, as the term is used in the other parts of the claim.  Rather, the claim language suggests that only particular graphics items are associated with particular businesses.

graphics items other than storefronts.  *See* '853 Patent col.8 ll.65-67, col. 9 ll. 4-6.  In addition, the Court finds that the "businesses" to which the claim language refers are those that resulted from the search, as made clear by the preceding language, which states that "the screen display var[ies] depending on the results of the search."  *See, e.g.,* '853 Patent col.10 ll.36-37.  Based on the foregoing, the Court finds that the proper construction of the "respective graphics items being associated with respective businesses" is "particular graphics items being associated with a particular business for which information was returned as a result of the search."

> **9.  "screen display being navigable to reveal graphics items adjacent those that are displayed"**

ICON argues that "screen display being navigable to reveal graphics items adjacent those that are displayed" should be construed to mean "the screen display includes information enabling interactive direction at the client to reveal graphics items adjacent those being displayed."  Pl.'s Opening Claim Construction Br. 20, ECF No. 46.  Travelocity argues that the term should be construed to mean "the screen viewed on the client permits movement through the scene to display additional graphics items stitched together side by side to graphics items previously visible in the scene."  Def.'s Opening Claim Construction Br. 24, ECF No. 44.

First, the parties dispute the term "navigable."  *See* Pl.'s Opening Claim Construction Br. 20, ECF No. 46; Def.'s Opening Claim Construction Br. 24, ECF No. 44.  In describing "virtual reality," the specification explains that the term is "not necessarily meant to describe the type of virtual reality that involves the use of gloves and helmets or goggles, but instead is used to describe the type of virtual reality that permits navigation through a scene, or manipulation of objects, using a mouse and keyboard."  '853 Patent col.5 ll.25-31.  The specification later explains that "[a] virtual reality scene

23

is a space in which a user can navigate by looking up, looking down, turning around, zooming in, or zooming out." *Id.* col.5 ll.44-46.   ICON reads the Webster's New World College Dictionary definition of "navigable"–that which "can be steered, or directed"–in light of the specification to arrive at its proposed construction of "enabling interactive direction."   Pl.'s Opening Claim Construction Br. 20-21, ECF No. 46; App. Pl.'s Opening Claim Construction Br. (Webster's New World Coll. Dictionary) at App. 130, ECF No. 47-3.

Travelocity argues that "navigation" or "navigate" in the year 1995 referred to "movement of location *through* a space, whether real or virtual."   Def.'s Opening Claim Construction Br. 24, ECF No. 44; Def.'s Opening Claim Construction Br. (The Dictionary of Computer Graphics and Virtual Reality) at App. 49, ECF No. 45; *id.* (The American Heritage Dictionary) at App. 47; *id.* (The Merriam-Webster Dictionary) at App. 35.   Travelocity contends that in all of the described embodiments, "the client must be able to move *through* the generated street scene in order to access a virtual business."   Def.'s Opening Claim Construction Br. 24, ECF No. 44.   In support of its proposed construction, Travelocity points to Figure 7, which the specification describes as a figure that "illustrates a scene after a user has navigated part way down the street."   '853 Patent col.9 ll.66-67.   The specification uses the term "navigate" several times, explaining that "a user of a client navigates into one of the storefronts," *id.* col.9 ll.7-8, "[d]ifferent types of music can play while a user navigates through a scene," *id.* col.9 ll.26-28, "audible advertising can play while the user navigates through the scene," *id.* col.9 ll.28-29, "[a]s the user navigates in the scene, the virtual reality player keeps up with the user's movements," *id.* col.9 ll.42-44, and "scenes involve navigating through a single panoramic image," *id.* col.9 ll.55-56.   Travelocity argues that "navigate" suggests movement through space, rather than merely an ability to steer or control, as proposed by ICON.

24

Def.'s Opening Claim Construction Br. 25-26, ECF No. 44.  The Court agrees with Travelocity.[4]

The Court finds that the specification's consistent use of the term "navigate" in its description of the

embodiments teaches that the term "navigate" is used to describe movement through the scene,

rather than the mere ability to control.

The parties next dispute the construction of the term "adjacent."  *See* Pl.'s Responsive Claim

Construction Br. 21, ECF No. 51; Def.'s Opening Claim Construction Br. 26, ECF No. 44.  ICON

argues that "adjacent" should be construed to mean "near or close (to something); adjoining," as

defined by Webster's New World College Dictionary, which also explains that "adjacent things may

or may not be in actual contact with each other."  Pl.'s Opening Claim Construction Br. 21, ECF No.

46; App. Pl.'s Opening Claim Construction Br. (Webster's New World Coll. Dictionary) at App.

132, ECF No. 47-3.  Travelocity argues that "adjacent" should be construed as "stitched together side

by side."  Def.'s Opening Claim Construction Br. 26, ECF No. 44.  The relevant portion of the

specification states:

> FIGS. 4A and 4B illustrate one embodiment of making a virtual
> reality scene to be used in displaying database search results.  As
> illustrated in FIG. 4A, a camera is used to take several pictures of an
> actual street from various vantage points.  These photographs are
> digitized, and electronically stitched together, as illustrated in FIG
> 4B.   To allow stitching of photographs where the camera turns
> corners, the images are warped such that straight lines become curved
> lines, so that all adjacent photographs can be stitched together side by
> side to form a panorama.  The virtual reality player in the client
> computer only views one small portion of the stitched photograph

---

[4] At the hearing, ICON observed that Travelocity's proposed construction of "navigable" had the potential to render the "virtual reality scene" claimed in dependent Claim 9 a nullity.  ICON, however, did not go so far as to contend that Travelocity's proposed construction did so.  The Court likewise finds that Travelocity's proposed construction of the term "navigable" does not invalidate Claim 9, but rather gives full force to Claim 1, which claims a screen display that is able to be navigated, rather than one that merely remains static.

> panorama at a time, and unwarps that portion so that straight lines appear straight.  As the user navigates in the scene, the virtual reality player keeps up with the user's movements, unwarping and displaying the user's vantage point of the panorama on the fly.  In an alternative embodiment, the virtual reality streets are formed using animations.

'853 Patent col.9 ll.30-47.

ICON argues that Travelocity's proposed construction is incorrect because the claim language does not require that all graphic items be stitched together.  Pl.'s Responsive Claim Construction Br. 18, ECF No. 51.  Rather, ICON contends that the stitching-together process is described in only one embodiment, and that the alternative embodiment discloses that the virtual reality scene can be formed using "animations" rather than stitching.  *See* '853 Patent col.9 ll.45-46.  ICON is correct in noting that only one embodiment speaks of electronically stitching together photographs to create a virtual reality scene.  *See* '853 Patent col.9 ll.30-44.  Moreover, the only time that the term "adjacent" appears in the specification, the written description states that "all adjacent photographs *can* be stitched together side by side to form a panorama."  *See id.* col.9 ll.38-39 (emphasis added).  The description therefore indicates that the "adjacent" photographs need not be "stitched together," since a contrary reading would make the specification language redundant.  Thus, it appears that graphics items can be adjacent, without necessarily being stitched together.  Accordingly, the Court finds that the term "adjacent" should be given its plain and ordinary meaning of "near or close (to something); adjoining."

Based on the foregoing, the Court finds that the proper construction of "screen display being navigable to reveal graphics items adjacent those that are displayed" should be construed as "screen visible on the client that is able to permit movement through the scene to display additional graphics items near or adjoining other graphics items previously visible in the scene."

26

IV.     **CONCLUSION**

In summary, the Court construes the disputed claim terms as follows:

1.  "category" means "type of good or service."

2.  "categories in which respective businesses are classified" means "type of good or service of each business in the database."

3.  "generating a screen display" means "selecting and arranging images for inclusion in a screen visible on the client."

4.  "cause a screen display to be generated for the client" means "cause the selection and arrangement of images for inclusion in a screen visible on the client."

5.  "graphics items arranged to provide the appearance of at least part of a commercial area, at least some of the graphics items having the appearance of storefronts" means "images arranged into a scene resembling an area having businesses, at least some of the images having the look of the front exterior of a business."

6.  "multiple storefronts of the screen display" means "more than one front exterior of a business in a screen visible on the client."

7.  "appearance of respective storefronts" means "the look of the front exterior of each business in a screen visible on the client."

8.  "respective graphics items being associated with respective businesses" means "particular graphics items being associated with a particular business for which information was returned as a result of the search."

9. "screen display being navigable to reveal graphics items adjacent those that are displayed" means "screen visible on the client that is able to permit movement through the scene to display additional graphics items near or adjoining other graphics items previously visible in the scene."

**SO ORDERED** on this **1st day** of **May, 2012.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**