UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ICON INTERNET COMPETENCE NET-WORK B.V., <br><br> Plaintiff, <br><br> v. <br><br> TRAVELOCITY.COM LP, <br><br> Defendant. | CIVIL ACTION NO. 3:11-cv-01131-0 <br><br><br> JURY TRIAL DEMANDED |

**TRAVELOCITY'S MOTION TO STRIKE
THE DECLARATION OF AHMED H. TEWFIK**

Defendant Travelocity.com LP ("Travelocity") files this Motion to Strike the Declaration of Ahmed H. Tewfik, Sc. D. attached as an exhibit to ICON's Response in Opposition to Travelocity's Second Motion for Summary Judgment of Non-infringement ("Tewfik Declaration") (Def. App. 1) and, in support thereof, respectfully shows the Court as follows:

**I.   BACKGROUND**

Travelocity filed its Second Motion for Summary Judgment of Non-infringement (D.E. 130) based on the opinions contained in the Preliminary Expert Report of Ahmed H. Tewfik Regarding Infringement of the Claims of U.S. Patent 6,002,853 by Travelocity.com L.P. served on August 27, 2012. In opposing Travelocity's Motion, ICON now seeks to avoid summary judgment by relying on new expert opinions of infringement that have never before been disclosed.

At a high level, the new opinions in Dr. Tewfik's declaration construct an entirely new theory of what elements of the '853 patent are met by certain pictures of hotels on Travelocity's website. In his "preliminary" expert report, Dr. Tewfik's sole opinion on how "some of the graphics items having the appearance of storefronts" within the claimed "commercial area" is met on Travelocity's website is because certain hotel photos are visible beneath a map. (Tewfik Preliminary Report ¶59, Ex. I) (Def. App. 37). ICON's infringement theory of this claim term, targeted specifically at Travelocity's Map View page displaying a map with a list of hotels with pictures of hotels beneath the map, was confirmed by Dr. Tewfik during his deposition. (Tewfik Dep. 125:24-127:12). Dr. Tewfik further testified that if the Map View page just removed the pictures of hotels, Travelocity would no longer infringe. (*Id.* at 137:15-138:16). And, the only place where hotel photos, which are not initially visible but which can be made to appear in a pop-up window over the map by clicking map markers, appear in Dr. Tewfik' expert report as examples of a different claim element: "the screen display being navigable to reveal graphics items adjacent those that are display[ed]." (*Id.* at ¶63.; Ex. K, L, and M) (Def. App. 42-47). Yet in his new declaration submitted to avoid summary judgment, Dr. Tewfik now says these pop-up windows are also an *additional* example of how Travelocity's website has "storefronts" within a "commercial area." (Tewfik Decl. ¶9) (Def. App. 7-8).

To support this new theory, Dr. Tewfik's declaration discloses for the first time at least the following additional opinions:

- "[S]torefronts" are included in the webpage on the server, along with the "map" and other graphics items assembled for presentation to a user, where the "map" is shown in Travelocity's selected screenshot . . . . This is evi-

- denced by the following screenshots, Figures 1 and 2, wherein "storefronts" in Figure 1, corresponding to those in the screenshot selected by Travelocity, are also seen in the "map" portion of the screenshot in Figure 2, as a result of action at the remote computer enabling those images from the webpage on the server to be seen at the remote monitor." (Tewfik Decl. ¶9) (Def. App. 7-8).

- Because of the distinction between the webpage on a Travelocity server and the monitor screen seen by a user at a "client" or remote computer, Travelocity could not avoid infringement simply by acting to block a user at a client computer from seeing on a remote monitor the "storefronts" selected and arranged by Travelocity's servers. Instead, it would be necessary for Travelocity to modify its computer code so that its servers would not gather or return information or code representing graphics items corresponding to the storefronts images. (Tewfik Decl. ¶11) (Def. App. 10-11).

This obscure distinction between capabilities of the code at the server and what is visible on a screen display (and at what point in time) does not appear in Dr. Tewfik's preliminary expert report as a basis for how Travelocity has "graphic items having the appearance of storefronts" within the "commercial area." Indeed, Dr. Tewfik's preliminary expert report on infringement served on August 27, 2012, relies entirely on screenshots of what is visible on the screen display--not anything in computer code--as the basis of his opinions on this element of claim 1. (*See, e.g.*, Tewfik Rep. ¶¶58-59 and 61) (Def. App. 37-39, 40-41).

Now less than two months before trial, ICON seeks to revise its infringement allegations to avoid summary judgment. Travelocity moves to strike Dr. Tewfik's Declaration because it is not merely a simple explanation of previously disclosed opinions or a correction to scrivener's errors; rather, it seeks to introduce new infringement opinions not previously disclosed in his original report. *See, e.g., Sobrino-Barrera v. Anderson Shipping Company, Ltd.*, 2012 WL 5205622 at *2 (5th Cir. Oct. 23, 2012) (found no abuse of discretion in excluding untimely affidavit of liability expert

that was not included in the expert report and went beyond "proving up" the opinions in the expert report) (Def. App. 54-58); and *EpicRealm Licensing, LP, et al. v. Autoflex Leasing, Inc.*, 2008 WL 8781699 at *2 (E.D. Tex.) (excluding expert's supplemental declaration that was attached to plaintiff's response to defendant's motion for summary judgment of non-infringement) (Def. App. 59-63). ICON has no basis for changing its infringement theory again at this late stage in the litigation. Travelocity would be severely prejudiced in its preparation for trial if ICON were allowed to supplement its infringement expert opinions less than two months before trial.

## II.     LEGAL STANDARD

Rule 26 requires a party using an expert to submit an expert report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Rule 16(b) gives the district court broad discretion in establishing deadlines to preserve the integrity and purpose of the court's docket. *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996). When deadlines exist, Rule 37(b)(2)(B) grants the district court power to "impose sanctions on a disobedient party by refusing to allow that party to introduce designated matters into evidence." *Id.* Opinions not properly disclosed in accordance with that rule may be excluded unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1).

Four factors are considered in determining whether to exclude expert testimony: (1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the im-

portance of the witnesses' testimony. *EpicRealm*, 2008 WL 8781699 at *2 (citing *Barrett*, 95 F.3d at 380).

### III. ARGUMENT

The first factor—whether ICON has an explanation for its failure to comply with the discovery order—weighs in favor of striking Dr. Tewfik's declaration. ICON did not file a motion for leave to supplement its expert opinions nor did it file a request for an extension of time to file expert reports earlier in the case. Either of these avenues would have given Travelocity and the Court an opportunity to evaluate the reasons behind ICON's change in position. Rather, ICON unilaterally supplemented and wholesale changed Dr. Tewfik's opinions two months after the expert discovery deadline without any explanation or justification at all. Although expert discovery closed on November 16, 2012 and fact discovery closed on November 19, 2012, Dr. Tewfik testified on December 13, 2012, that he intended to supplement his opinions barely a month before trial:

> Q. Dr. Tewfik, are you – do you plan to issue a supplemental report on issues of infringement in this case?
>
> A. Yes, I do. And I did discuss [sic] it with counsel before my first interaction with Paul Benoit. I did mention to counsel that it's time for me to supplement my initial report based on the information that was available to me.
>
> Q. When do you plan on providing this supplemental report to Travelocity?
>
> A. Given my schedule, that would have to be in January, in late January, most likely.

(Tewfik Dep. 54:3-14) (Def. App. 65). Its actions show that ICON simply failed to diligently develop its case in full before the close of discovery. Courts have held re-

peatedly that expert supplementation is not a proper vehicle to "give ineffective litigants a second chance to develop their case." *Reliance Ins. Co. v. Louisiana Land and Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997) (found no abuse of discretion in denying plaintiff's request to supplement expert report when it offered no justification for its delay).

ICON cannot argue that it needed more time or was waiting for more discovery in order to revise Dr. Tewfik's opinions. If so, it could have sought an extension of time on the deadline to submit expert reports. Yet Dr. Tewfik admitted he never requested an extension. (Tewfik Dep. 55:16-19) (Def. App. 66). Furthermore, all the information that Dr. Tewfik needed for his new opinions has always been available to him, since his declaration relies solely upon his review of the publicly-accessible Travelocity website and not Travelocity's documents or witnesses. Thus, the first factor weighs in favor of striking the Tewfik Declaration.

Regarding the second factor, Travelocity will be highly prejudiced by the new infringement theory disclosed in the Tewfik Declaration. Travelocity has relied on the opinions in ICON's Preliminary Expert Report on Infringement at considerable time and expense, to take Dr. Tewfik's deposition, to prepare its expert reports on non-infringement and invalidity, to analyze non-infringing alternatives in preparing its expert report on damages, to prepare and file its Second Motion for Summary Judgment of Non-infringement, and to prepare for trial. Importantly, Dr. Tewfik's new opinion is material to Travelocity's contention that the patent is invalid in light of prior art systems, such as SabreVision. Dr. Tewfik opined that this key element—

whether and how "storefronts" are initially visible in the "commercial area"—is missing from SabreVision:

> Q. Why do you disagree with Dr. Cook about Sabre Vision?
>
> A. I -- again, I'd have to go back to what I read, but what sticks in my mind or my memory is the fact that the Sabre system -- and a particular piece of a deposition that I was made aware of -- I did not read the whole deposition, I'd just gotten a piece of it -- talked about the fact that the Sabre system returned a textured list and you would be able to see one image of one hotel at any point in time and no more than that. And you'd have to, if I recall correctly, perhaps even click and select that hotel to see that image.

(Tewfik Dep. 103:5-16.) (Def. App. 67). Travelocity's expert, Dr. William Cook, relied upon Dr. Tewfik's original claim opinions in forming his invalidity analysis and providing testimony on whether and how the '853 patent is invalid in light of prior art such as SabreVision. (Cook Dep. 45:9-46:1) (Def. App. 76). In addition, both Dr. Cook and Travelocity's damages expert, Dr. Becker, relied upon Dr. Tewfik's original claim opinions in forming their own opinions regarding non-infringing alternatives and its effect on damages. And Dr. Cook's rebuttal opinions on non-infringement relied upon Dr. Tewfik's original claim opinions regarding what met the claim element requiring "storefronts" that are a part of the "commercial area."

It would be a waste of judicial resources and unnecessarily increase the cost of litigation if patentees were allowed to change their infringement theories whenever they were faced with a summary judgment motion. (As explained in Travelocity's Reply In Support Of Summary Judgment however, ICON's new theory still does not create a genuine issue of material fact). Such gamesmanship should be discouraged because "[t]o allow plaintiff to add more material now and create essentially a

TRAVELOCITY'S MOTION TO STRIKE – Page 7

new report would prejudice the defendants, who would then have to get an expert to address these last-minute conclusions, and thus disrupt the trial date in this case." *Reliance*, 110 F.3d at 257-258 (district court did not abuse its discretion in denying plaintiff's request to avoid the deadline for its expert report merely because the deposition of its expert witness did not go well). As ICON has essentially changed its entire infringement theory, Travelocity will be highly prejudiced if it has to cease trial preparation in order to supplement all of its expert reports on non-infringement, invalidity, and damages, as well as redo expert discovery months after the deadline has expired. Thus, this second factor also weighs in favor of striking the Tewfik Declaration.

The final two factors are "the possibility of curing such prejudice by granting a continuance" and "the importance of the witnesses' testimony." These factors also weigh in favor of striking the Tewfik Declaration. *EpicRealm*, 2008 WL 8781699 at *2. (Def. App. 59). First, a continuance is inappropriate because this case has been pending for almost two years and the scheduling order has been amended multiple times. (D.E. 27, 97, and 100). And, ICON has already changed other material aspects of its infringement theory in its Final Infringement Contentions served on May 30, 2012, after the Court rejected its claim construction positions. (*See* Travelocity's Br. In Support Of Its Motion For Summary Judgment Of Non-Infringement, D.E. 59 at 6-8) (Def. App. 91-92) (ICON's Preliminary Infringement Contentions initially accused the sub-categories of hotel ratings, amenities, etc. on Travelocity's system to infringe the claim element "categories." But once the Court construed "categories in which respective businesses" are classified to mean the more general "*type* of good or ser-

vice," ICON changed its position in its Final Infringement Contentions to allege "categories" are hotels, airline flights, rental cars, and cruises).

ICON should not be granted indefinite delays to change positions on the most fundamental issues of infringement. Although Travelocity believes this case should be disposed of before trial on summary judgment, Travelocity is ready for trial. A continuance would only result in additional delay and an unnecessary increase in the expense of defending a lawsuit. *Barrett*, 95 F.3d at 381. Lastly, any "claimed importance of Plaintiff['s] expert testimony merely underscores the need for Plaintiff[] to have complied with the court's deadlines or at least informed the trial judge in advance if good faith compliance was not possible." *Id.* Instead, rather than providing some good faith explanation for supplementing its Preliminary Expert Report, ICON chose to attach its supplemental testimony as an exhibit to its opposition to Travelocity's second motion for summary judgment.[1] Therefore, these final two factors weigh in favor of striking the Tewfik Declaration.

## IV. CONCLUSION

Accordingly, for the foregoing reasons the Court should grant Travelocity's Motion to Strike the Declaration of Ahmed H. Tewfik, Sc. D.

---

[1] ICON is clearly cognizant that Dr. Tewfik's declaration may not be looked upon favorably because Dr. Tewfik's declaration pre-emptively states that "This is in line with my report and testimonial opinion that infringement by Travelocity's servers does not require that a remote user actually see particular images on a monitor." Tewfik Decl. ¶11 (Def. App. 10-11). However, Dr. Tewfik's original opinion was completely silent on whether or how this would show that Travelocity's system met the limitation that "storefront" images are a subset of the "commercial area" images.

Dated: January 22, 2013

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Neil J. McNabnay*
Neil J. McNabnay
Texas Bar No. 24002583
mcnabnay@fr.com
Thomas M. Melsheimer
Texas Bar No. 13922550
melsheimer@fr.com
Andrew R. Graben
Texas Bar No. 24045964
graben@fr.com
David B. Conrad
Texas Bar No. 24049042
conrad@fr.com
J. Kristopher Long
Texas Bar No. 24060181
klong@fr.com
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

Counsel for Defendant
TRAVELOCITY.COM LP

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 22, 2013, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5.1.

                  */s/ Jane J. Du*
                    Jane J. Du

## CERTIFICATE OF CONFERENCE

  Pursuant to Local Rule 7.1, I certify that I have conferred with Plaintiff's counsel, Guy Fisher, regarding the relief requested in this Motion. Mr. Fisher refused to agree to the relief requested and, therefore, the matter must be submitted to the Court for determination.

                  */s/ Jane J. Du*
                    Jane J. Du